TD's Western Wear and Tack, LLC, class plaintiff,
as well as all other similar situated individuals
including but not limited to foreign entities,

    Plaintiffs,

        v.                     Civil Action No.:
                                  JURY DEMANDED

STATE OF TENNESSEE,
and GOVERNOR BILL LEE,

    Defendants.

## COMPLAINT

    NOW COMES Plaintiff, by and through their attorneys, THE EGLI LAW FIRM and the

LAW OFFICES OF DARREN V. BERG, as a putative class plaintiff and hereby brings this

action for declaratory and injunctive relief, and also seeks the Court's approval of a class action

on behalf of all similarly situated individuals in the State of Tennessee and elsewhere and seeks

monetary damages for the entire class for Plaintiff and all similarly situated individuals, against

BILL LEE, in his official capacity as the Governor of Tennessee (hereafter referred to as

"Defendants") for the business license fees paid by Plaintiff and all potential class members.  This

cause of action is based on the Executive Orders of Governor Lee, based on the Covid-19 disease,

wherein his Orders blatantly violate the constitutional rights of business owners of the State of

Tennessee as will be explained more fully herein, infra. In support of this claim, Plaintiff states

the following:

## PARTIES

1.    Plaintiff, T D's Western Wear and Apparel, LLC ("Plaintiff"), is a limited liability

Company registered in Tennessee with its principal place of business located in Knox County,

Tennessee.

2.     Defendant, Bill Lee, in his official capacity as the Governor of Tennessee, issued the unconstitutional Orders, which are either facially void or voidable as violations of due process of law as applied to this Plaintiff and all putative class members, to shut down hundreds of thousands of businesses throughout the State of Tennessee, either for an extended period of time or permanently.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)- (4), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution. This action is brought as a class action pursuant to Fed. R. Civ. Proc. 23.

4.     This action is brought by Plaintiff and seeks relief under 28 U.S.C. §§ 2201-2202, 42 U.S.C. §§ 1983 et seq., and the Fourteenth Amendments.  See U.S. Const., am. XIV.

5.     Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## INTRODUCTION AND SUMMARY OF THE CLAIMS PRESENTED

6.     Plaintiff is a limited liability company with its principal place of business located in Knox County, Tennessee.  Plaintiff is a retail store selling western themed boots and clothing and brings this claim in behalf of itself and all others similarly situated businesses across the State of Tennessee, which were adversely affected by being ordered to shut down by way of Governor Bill Lee's Orders.  A copy of the challenged Orders are attached hereto as **Collective Exhibit A**.  The Orders blatantly violate the Due Process rights and fundamental constitutional rights of Plaintiff and all similarly situated businesses.

7.     Furthermore, the Due Process Clause of the Fourteenth Amendment, applicable to the Defendants herein--who at all times material hereto were acting under color of state law--

guarantees Plaintiff, and all other similarly situated businesses, the right to be free from the deprivation of its liberty and property interests without Due Process of law.  See id.

8.     The Due Process Clause of the Fourteenth Amendment, as it has been interpreted by the United States Supreme Court, has two separate prongs:  substantive Due Process and procedural Due Process.

9.     Procedural Due Process requires fair notice and fair hearing; whereas substantive Due Process challenges the very nature of the government's actions and laws.

10.    Clearly, Plaintiff, and all similarly situated businesses, were not provided fair notice of the shutdown Order(s) before  they occurred; neither have they been afforded a fair hearing to challenge the same.

11.    More problematic, however, is the fact that the Orders violate substantive Due Process in a fundamental way never before authorized by the Supreme Court of the United States.

12.    In the absence of the declaration of martial law, neither the President of the United States, nor any other executive at the State, County or City level of these United States can suspend constitutional rights of citizens based upon their tyrannically-based belief that the vitiation of those rights is needed at the time.  See Ex parte Millgan, 71 U.S. 2 (1866).

13.    In considering the individual liberties guaranteed to the citizens of this realm as set forth in the Constitution of these United States, a rightful respect for the views held by our founders, as to the issue at hand, would seem quite appropriate:

(a)    "Those who would give up essential liberty to obtain a little temporary safety, deserve neither liberty nor safety." -- Benjamin Franklin, 1775.

(b)    Upon exiting the Constitutional Convention, Benjamin Franklin was asked by a group of citizens what form of government had been created.  In response, Mr. Franklin stated, "A republic, if you can keep it." -- Benjamin Franklin, 1787.  A republic differs materially in form of government from almost all other forms of government in that it is organized to protect

the liberty interests of regions, and the inhabitants thereof, over those of the mass-population centers, and the inhabitants thereof. <u>See, e.g.</u>, The Pre-Caesarian Roman Republic; <u>see also</u> Brabham, Francis, <u>The Political Works of Marcus Tullius Cicero Comparing his Treatise on the Republic and his Treatise on the Laws</u>, (Spettigue 1841). A unique and constitutionally-protected portion of our experiment in republicanism, <u>see, e.g.</u>, the multiple times the loser of the popular vote has won the Presidency of the United States; <u>c.f.</u> U.S. Const., Art. 1, § 2, is the fact that the rights of the region (States) and the ***individual*** cannot be usurped without Due Process of law. The entire purpose of the Bill of Rights (mandated by the anti-federalists in order for their agreement to the federal constitution), was to ensure the rights of the individual. <u>See</u> U.S. Const., ams. I, II, III, IV, V, VI, VII, VIII and IX. These rights, as noted by Jefferson and John Locke before him, do not originate from GOVERNMENT. <u>See</u> Jefferson, Thomas, Adams, John, Franklin, Benjamin, <u>The Unanimous Declaration of these United States of America</u>, (Maltack, Timothy, Philadelphia, Penn., 1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed ***by their Creator*** with certain unalienable rights, that among these are life, ***liberty*** and the pursuit of happiness."). If these fundamental rights do not originate from government (man), they cannot be taken away by government (man). Any suggestion to the contrary by these Defendants and our federal and state superiors, supreme beings, betters, overlords, controllers, and tyrants, constitutes nothing less than an express repudiation of the founding principles of this Republic--notwithstanding an alleged virulent strain of the flu (as if that hasn't happened before!). It is readily apparent our founders were aware of the plague. <u>See</u> "Yellow fever breaks out in Philadelphia" in 1793 (History.com last checked Apr. 24, 2020). Yet, they somehow failed--albeit recognizedly pursuant to deeply-held beliefs, a concept seemingly utterly alienated to those of our current federal, state and local masters--to set forth any provisions in our primary law allowing the suspension of constitutional liberties and freedoms, absent rebellion or invasion. It is without question our founders certainly knew of the plague

before 1793, but, to the extent the Defendants herein demand strict proof thereof, Plaintiff would refer them to the previously shut-down libraries across the State which were mandated to close because of the challenged Orders herein, where ample volumes therein will help illuminate them in this regard.   More importantly, if our framers deemed an outbreak of a virulent strain of the flu to be of such critical importance to vitiate the liberties of Americans, they surely would have amended the federal constitution to ensure tyranny could prevail, and individual rights could cease to exist, for the then-existing national emergency of whatever method, novelty, or proportion our then-existing better-doers decide requires the quarantining of us mere plebes! These actions are so far afield from acceptable constitutional practice and jurisprudence to be, in the absence of the national media horde proclaiming the impending utter demise of Western Civilization unless we all "shelter in place" "until a vaccine is approved," an affront to an organized system of liberty.

(c)      Thomas Jefferson, the primary drafter of the Declaration of Independence, and one of our most important founders, stated as follows:

> The people can not be all, and always, well informed. The part which is wrong will be discontented in proportion to the importance of the facts they misconceive. If they remain quiet under such misconceptions it is a lethargy, the forerunner of death to the public liberty. We have had 13 states independent 11 years. There has been one rebellion. That comes to one rebellion in a century and a half for each state. What country before ever existed a century and half without a rebellion? And what country can preserve its liberties if their rulers are not warned from time to time that their people preserve the spirit of resistance? Let them take arms. The remedy is to set them right as to facts, pardon and pacify them. What signify a few lives lost in a century or two? The tree of liberty must be refreshed from time to time with the blood of patriots and tyrants. It is its natural manure.

Letter from Thomas Jefferson to William Stephens Smith, 1787.

(d)      In Federalist Paper No. 51, James Madison explained,

> The interest of the man must be connected with the constitutional rights of the place. It may be a reflection on human nature, that such devices should be necessary to control the abuses of government. But what is government itself, but the greatest of all reflections on human nature? If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be

administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.

....

Justice is the end of government. It is the end of civil society. It ever has been and ever will be pursued until it be obtained, or until liberty be lost in the pursuit.

Federalist Paper No. 51, James Madison, 1788.

(e)     Indeed, Article 1, Section 9, Clause 2 of the United States Constitution, as made applicable to these Defendants by the Due Process Clause of the Fourteenth Amendment, sets forth some rather interesting language, which our tyrannical do-gooders and self-proclaimed know-it-all elected officials and overseers seem to ignore, perhaps with impunity until the initiation of this action:'

The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

U.S. Const., Art. 9, § 2 (1787; ratified 1789).

If the Writ of Habeas Corpus "shall not be suspended," except in cases of "rebellion or invasion" then quite obviously, the remainder of the constitution's individual protections and rights cannot either, save for well-established, and long-existing authority relating to the suspension of those rights for individuals convicted of crimes and or of those who are sick with some disease pursuant to public health epidemics or pandemics where the State's authority to quarantine the SICK--but not the HEALTHY--has been long recognized.

(f)     "Give me liberty or give me death!" - Patrick Henry, 1775.

14.    Although legal precedent exists for an executive, as noted hereinbefore, to order a person who is sick with a disease to quarantine, no precedent exists, whatsoever, to allow an executive to issue an order, mandating under penalty of law that non-sick persons shelter in place or to close businesses--wherein no proof exists that said business is causing or contributing to the spread of such disease other than the presence of its customers and employees.

15.    As a result of the Orders, mandating the closure of businesses deemed "non-essential," Plaintiff right to make money in Tennessee was taken away by the Defendants' Orders.

16.     In addition, the Defendants' Orders are abjectly ridiculous, not based on any science

whatsoever as to which employees and businesses are "essential" and allowed to remain open and

which businesses are "non-essential" and required to close.

17.     For just one example, the Governor's Orders deem as essential Wal-Mart, Kroger, Target

and others (which sell shoes and clothing) but deems as non-essential clothing and shoe stores

selling the same products, such as Plaintiff and all other similarly situated businesses.  Only a

bureaucrat could conceive such utter inanity.

18.     In the alternative, the Orders in question are arbitrary and capricious (if rational basis is

applied) and not narrowly tailored to promote a compelling governmental interest (if strict

scrutiny is applied).

19.     The Constitution of the United States does not cease to exist at the desk of any executive

from the President on down, including the Governor of this State.

20.     These Defendants' actions cannot stand unless this Court were to suspend the rights of the

Plaintiff, and all other similarly situated businesses, based on the flu!  Utter nonsense!

### FACTS

21.      The World Health Organization ("WHO") and the Center for Disease Control and

Prevention ("CDC") identified the novel coronavirus ("COVID-19") as a "public health

emergency of international concern.

22.      Likewise, the U.S. Department of Health and Human Services ("HHS") declared that

COVID-19 has created a public health emergency.

23.     On March 12, 2020, Governor Lee, issued an executive order setting forth

existence of a state of emergency throughout the State of Tennessee due to the Covid

19 outbreak.

24.     Thereafter, on March 22, 2020, Governor Bill Lee, in what was designated as Executive

Order No. 17, prohibited all gatherings of ten or more people, including, but not limited to,

restaurants, bars, or other drink establishments, gyms, or fitness exercise centers and ordered that these business shall not be open to the public. See Collective Exhibit A, at Order No. 17.

25.    On  March 30, 2020, Governor Bill Lee issued Executive Order No. 21. Order No. 21 amended Order No. 17 to include that businesses or organizations that perform close personal services shall close. The Order included, but was not limited to, barber shops, hair salons, waxing salons, threading salons, nail salons or spas, spas providing body treatments, body art or tattoo businesses, tanning salons  and massage therapy or massage services. The Order further required all entertainment and recreational gathering venues to close, which included night clubs, bowling alleys, arcades, concert venues, theaters, auditoriums … etc. See Collective Exhibit A at Order No. 21.

26.    On March 30, 2020 Governor Bill Lee issued Executive Order No. 22. Order No. 22 required "non-essential" businesses to close. Order No. 21 goes further to set forth that all terms and conditions set forth in Orders No. 17 and 21 remain in full force and effect. Order No. 22 listed in its Attachment essential business that could remain open which included health care and public health operations, human services operations, essential infrastructure operations, essential government functions, food and medicine stores (which included the likes of Walmart, Target, Kroger, Costco, etc. that also sell clothing).  However, businesses like the Plaintiff and all other similarly situated businesses were required to remain closed. See Collective Exhibit A at Order 22 – Attachment.

27.    On April 8, 2020, Governor Bill Lee issued Executive Order No. 25. Order No. 25 went further in closing down businesses throughout Tennessee. Order No. 25 required all dentists, pediatric dentists, orthodontists, oral surgeons, periodontists, prosthodontists and endodontists not to perform a any services which were not an emergency. Order No. 25 further prohibited any medical procedures unless the procedures were life sustaining. See Collective Exhibit A at Order 25.

28.    On April 13, 2020, Governor Bill Lee issued Executive Order No. 27. Order No. 27

extended the prohibitions set forth in Orders No. 17, 21, 22 and 23 through April 30, 2020. See

Collective Exhibit A at Order No. 27.

29.    Not one of Governor Bill Lee's Executive Orders made any distinction between businesses

that would allegedly contribute to a spread of Covid 19 and those which would not.  Neither do

the Orders set forth any scientific or medical bases as to why certain "essential" businesses could

remain open (and not contribute to a spread of the virus) while others had to close (because of the

Governor's decision that said businesses would contribute to a spread of the virus).  The blanket

Executive Orders simply required all businesses like the Plaintiff as well as all other similarly

situated businesses to close.

30.    In Tennessee, like other States, businesses that operate within this State, including foreign

business entities must pay a business license fee to the State every year in order to do business.

Whether a citizen of Tennessee wishes to do business under a limital liability company,

corporation – profit or non-profit, limited liability partnership or limited partnership that person

must pay a yearly fee to do so. Moreover, a filing fee is required when a person registers to do

business as and is required to be paid again each year to keep the entity in good standing with

Tennessee. See https://tnbear.tn.gov/Ecommerce/RegistrationInstr.aspx. See In re Carter, 177

F.2d 78 (D.C. Cir. 1949) (holding that "It may be true that the grant of authority to engage in the

bonding business is an administrative act. But the deprivation of that right, once granted, is a

judicial act, requiring due process of law."), cited by Jordan v. United Insurance Co. of

Am., 289 F.2d 778 (D.C. Cir. 1961) (holding that "This means that such license or certificate

may not be revoked, nor may renewal be denied, without procedural and substantive due process

of law."); Kline v. State Beverage Dep't of Fl., 77 So. 2d 872 (Fla. 1955) (holding

"Holder of liquor license is entitled to notice an opportunity to be heard before revocation of

license.").

31.     Governor Bill Lee's Orders are arbitrary and capricious in the extreme in that no scientific or medical bases exist to justify the Governor to allow certain businesses to remain open, such as Target, Walmart, Kroger, Costco while closing all others. Indeed, T.C.A. § 48-26-203 states in pertinent part that "Each domestic corporation, and each foreign corporation authorized to transact business in this state, shall deliver to the secretary of state for filing an annual report."

32.     Unless this Honorable Court issues an injunction prohibiting the unconstitutional actions set forth herein, it is possible and perhaps likely that Governor Bill Lee will reissue these unconstitutional orders if there is a second outbreak of Covid 19 or if he deems it necessary based upon an insufficient "flattening of the curve" or an uptick in new Covid-19 cases, which would result in further irreparable harm upon the Plaintiff and the class members herein.

## BUSINESS RESTRICTIONS UNDER THE ORDER AT ISSUE HEREIN

33.     Under the Orders at issue herein, Defendants mandated the shutdown of all business not deemed essential, such as Plaintiff. In the Orders, "essential" means, hospitals, grocery stores (that also sell clothes, such as Kroger, Costco, Walmart, Target, etc.), beverage stores (liquor stores as they have never closed) gas stations, hotels, parks and banks.

34.     Any business operating out of compliance with the Order herein is subject to the possibility of severe fines and penalties.

35.     Notably absent from the executive Orders issued by Defendants is any provision refunding the businesses deemed "non-essential" the costs of their business license fees.

36.     Under the Orders herein, businesses, such as the Plaintiff's, which can safely operate while still observing social distancing, were ordered to close by way of governmental tyranny, thereby constituting an express repudiation of the Constitution of the United States.

37.     Plaintiff was not categorized as an "essential" business that would be permitted to stay open when Defendants ordered several categories of businesses to close for the stated public purpose of controlling COVID-19 to protect public health.

38.     Plaintiff, and all other similarly situated businesses, have suffered irreparable injuries as a result of the Defendants' Orders; however, these Defendants have refused to return the license fees they charged Plaintiff and all other similarly situated businesses.

39.     Plaintiff, and all other similarly situated businesses, have now lost profits, the sole reason they, or any other rational actor would, pay a yearly license fee to the State.  In closing down these businesses, Defendants have expressly repudiated the licenses in question and have done so in violation of federal constitutional rights.

40.     Walmart, Sam's Club, Target, Kroger, Costco and others can remain open because they sell food and/or appliances; but they also sell clothing and shoes.  However,  a smaller retail clothing store, like Plaintiff,  (that sells clothing and shoes) cannot.  These Orders, utterly devoid of any scientific or medical bases, and in express repudiation of common sense and logic, beg the question as whether those issuing the same are even aware the Constitution of the United States applies to Tennessee.  Quite obviously, these Defendants cannot pick winners and losers in business--selecting some for governmentally-mandated approval to continue operating while closing most all others.  Clearly, Tennessee and Governor Bill Lee cannot do this!   It boggles the mind that a lawsuit even has to be filed to re-enforce the constitutional rights of businesses. But it clearly does, as the State and the Governor have not rescinded their Orders, and more importantly, believe the same to have been legally and properly issued.

41.     With the forced closures, Defendants caused considerable damage to Plaintiff, and all other similarly situated businesses, despite having required them to pay a yearly fee to operate.

42.     The Defendants actions have resulted in massive, and in most cases, irreversible losses to the businesses' financial circumstances that are in dire need of an immediate Order, enjoining the

Defendants from any continuation of their unconstitutional Order notwithstanding their proposed "phased" re-opening of said businesses so that they can never do this again. Ever!

43.    Through its unconstitutional Orders, shutting down Plaintiff and all other similarly situated businesses, Defendants have breached/repudiated the license fees and all other businesses fees they required Plaintiff and all other similarly situated businesses to pay in express violation of the Contracts Clause of the United States Constitution. <u>See</u> U.S. Const. art. 1, section 10, clause 1.

44.    Plaintiff, and all other similarly situated businesses, also have a property interest in the license issued by the State of Tennessee and paid for by them which these Defendants unconstitutionally violated.

45.    Plaintiff, and all other similarly situated businesses, also have procedural and substantive due process rights to liberty and property in their respective businesses (and to earn a living from the same) which these Defendants unconstitutionally violated.

<u>**AUTHORITY**</u>

46.    Governor Bill Lee claimed his authority to enact the challenged Orders by citing a set of broad emergency statutes which were alleged to authorize his actions to stem the spread of COVID-19 across Tennessee.

47.    This suit accepts as fact that Governor Bill Lee took action for a public purpose. As stated in the preamble to the executive orders, "the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared [COVID-19] a 'public health emergency of international concern,' and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency."

48.    However, Governor Bill Lee's Orders are arbitrary and capricious in that it allows Walmart, Sam's Club, Costco, Kroger and Target Stores (that sell shoes and clothing) to remain open but closes retail clothing stores (that sell shoes and clothing). Indeed, only a government

bureaucrat, selecting winners and losers based on consideration of campaign contributions, industry trade groups, lobbyists' arguments and the like could ever formulate such ridiculous, non-scientific based Orders. In addition, any business deemed essential can sell clothes; Plaintiff, and all other similarly situated businesses which also sell clothes were ordered to close by Defendant's Orders. This makes no logical sense whatsoever and does not therefore pass the rational-basis-test let alone strict scrutiny review.

49.     In addition, in closing all of the stores deemed non-essential, the Orders have resulted in the massive increase of in-person shopping at stores like Walmart, Costco Sam's Club, Kroger, Target, etc. Upon information and belief, if the purpose of the Defendants' Orders were to halt the spread of the Covid-19 virus, it appears as if the Defendants' Orders are primarily designated to promote the spread: herd all members of the community into a few designated businesses. Utterly, incomprehensible! As noted, the Defendants' Orders makes no logical sense whatsoever and do not therefore pass the rational-basis-test let alone strict scrutiny review.

50.     Notwithstanding any legitimate public purpose, the Defendants' Orders violate the fundamental rights of Plaintiff, and all individuals similarly situated businesses, to be free from governmental interference in their right to earn money as protected by the Constitution of the United States and the Constitution of the State of Tennessee.

## COUNT I

## VIOLATION OF THE CONTRACTS CLAUSE—42 U.S.C. §1983

## The Orders herein are an unconstitutional interference of the Defendants with the rights of the Plaintiff and all similarly situated Plaintiffs to earn money

51.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

52.     Defendants' Orders, closing all businesses deemed "non-essential," clearly interfered with the rights of Plaintiff, and all similarly situated businesses, to be free of governmental interference with their liberty and property interests to earn money.

53.     These Orders, interfering with said rights, are in violation of the Due Process Clause of the Fourteenth Amendment, guaranteeing the rights of said Plaintiff, and all other similarly situated businesses, to be free from the deprivation of their rights to liberty and property to earn money.

54.     Defendants issued Executive Orders for the public purpose of protecting the public health, safety and welfare.

55.     Defendants have placed the cost of these Orders – issued for the benefit of the public – squarely upon the shoulders of shut down businesses but have failed to refund the state-mandated license fees to the affected businesses for their unconstitutional actions.

56.     Defendants herein acted under color of state law.

57.     Given the foregoing, the Plaintiff, and all similarly situated shut-down businesses, would sue the Defendants for interfering with their contracts and repudiation of said contracts (the license fees) for payment of business license fees in order for said businesses to do business in Tennessee and seek this Court's approval of a class action based on the Orders in question. Clearly, the business license itself is mandated by the State, and the Plaintiff, and all other similarly situated business, pay the same in order to do business in compliance with State law. These businesses only do so as they are seeking a profit from the operation of their businesses or they would never pay a fee to the State (unless they are a non-profit and such businesses are also protected as set forth herein infra, and supra).  Therefore, the State's offer of the license for a payment of a fee, the acceptance of the offer by these Plaintiffs, and the payment of the fee by the same constitute the necessary elements to constitute a contract under the common law of both the State of Tennessee and the United States of America.

**SUBSTANTIVE DUE PROCESS—42 U.S.C. §1983**

**INTERFERENCE WITH LIBERTY AND PROPERTY INTERESTS OF AFFECTED BUSINESSES AS TO THEIR RIGHTS TO LIBERTY AND PROPERTY IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT**

58.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

59.     Never in the history of the United States – even in war time – has any governmental entity, such as these Defendants, created laws and/or issued executive orders, vitiating the constitutional rights of "all" citizens, and businesses, on a state and/or national basis as has occurred by the issuance of the challenged Orders.  The two potential exceptions to this statement resulted in the Supreme Court's reversal of President Lincoln's suspension of the writ of habeaus corpus for southern sympathizers, Ex Parte Milligan, see, supra at 3, ¶ 13, and on the Supreme Court's affirmance of President Roosevelt's Order, quarantining (or placing into detention) American citizens of Japanese descent, Korematsu v. United States, 323 U.S. 214 (1944) (challenging President Roosevelt's executive Order 9066 of February, 1942).  As cannot seriously be argued, Korematsu had for generations come into substantial disfavor and criticism by leading constitutional scholars, and it was recently given its proper place in the ash heap of history alongside Dred Scott v. Sandford, 60 U.S. 393 (1856), overruled by U.S. Const. am. XIII, and Plessy v. Ferguson, 163 U.S. 537 (1896), overruled by Brown v. Board of Education, 347 U.S. 483 (1954).  See Trump v. Hawaii, 585 U.S. ____, 138 S. Ct. 2392 (2018) (Roberts, C.J.) ("The dissent's reference to Korematsu, however, affords this Court the opportunity to make express what is already obvious: Korematsu was gravely wrong the day it was decided, has been overruled in the court of history, and—to be clear—'has no place in law under the Constitution.'").  Notwithstanding those abhorrent decisions--ultimately corrected by the chief arbiter of the meaning and application of our primary law to the citizens of this realm, neither Dred Scott nor Korematsu so much as attempted to ignore, suspend or vitiate the constitutionally-protected rights in question to all citizens (Dred Scott-- only to slaves; Korematsu--only to citizens of Japanese descent).  As such, these Orders are even more

constitutionally repugnant than those abominations!  To be clear, the Orders challenged herein are more of an affront to the principles of individual liberty enshrined in the Declaration of Independence and as set forth thereafter in the United States Constitution and the Bill of Rights than either of the decisions in Dred Scott or Korematsu.  These Orders cannot stand if we are to retain our well-earned reputation as a nation governed by laws and not men.   If the people through their elected representatives and executives wish to amend the constitution so as to suspend constitutional rights when a virulent flu occurs, then they may do so.  However, unless and until they do, these Orders, and all others like them, must be struck, and compensation based on the same must be paid, or we no longer have kept our republic.  We will have simply given nurture and succor to Franklin's dire apocalyptic warning that if we were ever to trade liberty for safety, we are entitled to neither.

60.     The Plaintiff, and all similarly situated shut-down businesses, have a protected liberty interest in their right to earn a living through their respective businesses.

61.     The Supreme Court "ha[s] emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" Cty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).

62.     Governmental liability and "fault [may] lie[] in a denial of fundamental procedural fairness … or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" Id. at 845-846 (citations omitted).

63.     "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" United States v. Salerno, 481 U.S. 739, 746 (1987) (quoting Rochin v. California, 342 U.S. 165, 172 (1952), and Palko v. Connecticut, 302 U.S. 319, 325–326 (1937)).

64. "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Lewis, 523 U.S. at 847 (quotations omitted).

65. These Orders as set forth above, constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiff's, and all other similarly situated shut-down business's, liberty and property interests protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

66. Defendants have acted under color of state law and have deprived Plaintiff, and all other similarly situated businesses, of their liberty and property without substantive or procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

67. Defendants' actions, including issuance and enforcement of these Orders, constitute the official custom, policy, and procedures of the State of Tennessee because they were issued at the executive level. See Exhibit A.

68. Defendants' have arbitrarily, irrationally and capriciously violated the rights of Plaintiff, and other similarly situated businesses', as previously noted herein because if the Orders were designed to prevent the spread of Covid-19, they have resulted in herding all members of the community into a few, governmentally-approved businesses to the exclusion of all others. Science this is not!

69. The Defendants Orders violate substantive and procedural Due Process.

70. The Defendants' behavior does not comport with traditional notions of fair play and decency, Breithaupt v. Abram, 352 U.S. 432, 435 (1957), and shocks the conscience' and violates the 'decencies of civilized conduct.'" See Lewis, 523 U.S. 833, 846–47 (citations omitted). It thus violates Plaintiff's, and all similarly situated businesses, substantive and procedural Due Process rights.

71.     In the absence of a declaration of martial law, no governmental entity in this nation may vitiate the constitutional rights of its citizens.  See Ex Parte Milligan, supra; accord Trump, 585 U.S. ___, 138 S. Ct. 2392, overruling Korematsu, 323 U.S. 214.   Perhaps unbeknownst to foreign tyrants, the President of these United States, and the Governor of the State of Tennessee, the constitutional rights of Tennesseans--who more than any other citizens of this realm are responsible for the protection of same on pain of death (the Volunteer State is not because we volunteered for football; it's because we volunteered to fight and die for those words Mr. Jefferson wrote and for the principles in the Constitution that followed)--actually STILL APPLY during a virulent QUASI-FLU PANDEMIC.  If the government wishes to vitiate such rights legally, it simply needs to amend the Constitution of the United States and insert a "your-rights-cease-when-the-flu-becomes-a-public-problem-that-we-deem-sufficiently-important" clause as an amendment thereto.  In the meantime, these authorities' actions constitute nothing less than tyranny!  If it were not for the existence of a tri-partite form of government, these actions would go unchallenged.  Unfortunately for these Defendants and their tyrannical comrades issuing nearly identical orders in most all other states, the judicial branch of our federal system holds the ultimate authority to determine whether their Orders comply with our primary law.

72.     As a direct and proximate result of Defendants' Executive Orders, Plaintiff, and all similarly situated businesses, have and will continue to sustain, monetary damages.

73.     Plaintiff, and all other similarly situated businesses, therefore sue the Defendants for violating their rights secured by the Constitution, Treaties and Laws of the United States and seek money damages for each putative class member by way of Tennessee disgorging all of the business fees paid by Plaintiff and all other similarly situated businesses for the fees owed in year 2020.

74.     Plaintiff also seeks class certification.

75.     Finally, the proper standard of review (strict scrutiny, intermediate scrutiny or rational basis) is somewhat unknown as no governmental entity issuing an Order--save those previously

noted herein, has ever attempted to vitiate the constitutional rights of citizens to any degree as those contained within the challenged Orders. And both President Lincoln's and Roosevelt's actions were ultimately repudiated by the United States Supreme Court. <u>See</u> <u>Ex Parte Milligan</u>, <u>Korematsu</u>; <u>see also</u> <u>Marbury v. Madison</u>, 5 U.S. 137 (1803)

76.     In any event, clearly the rights at issue are fundamental rights and this Court should therefore employ strict scrutiny to review them. When applying strict scrutiny, this Court has no choice but to conclude that the challenged Orders are facially void in violation of substantive Due Process as the challenged Orders are not sufficiently narrowly tailored to promote the government's alleged compelling interest. Therefore, under strict scrutiny, these Orders must be struck down as unconstitutional.

77.     In the alternative, the Orders in question are utterly nonsensical. For example,  a liquor store is deemed essential (which sells cigars), but a cigar store which sells alcohol is deemed non-essential (and therefore shut down). How does a bureaucrat even conceive this?   Just because an infectious disease specialist opines that many citizens will die without such Orders, does that cloak any executive with constitutional immunity? In the absence of a constitutional amendment, allowing for the vitiation or restriction of the constitutional rights of the governed, the answer does not even need to be stated as it is readily apparent. Therefore, the only possible excuse is that this executive has traded safety for liberty, and therefore he is entitled to neither.

**<u>Count III</u>**

**<u>PROCEDURAL DUE PROCESS—42 U.S.C. §1983</u>**

**<u>FAILURE TO AFFORD THE AFFECTED BUSINESSES WITH A FAIR HEARING FOR THEM TO CHALLENGE THE TAKING AND/OR SUSPENSION OF THEIR BUSINESS LICENSES IN WHICH THEY HOLD A PROPERTY INTEREST UNDER THE 14TH AMENDMENT'S DUE PROCESS CLAUSE</u>**

78.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

79.    When a governmental entity such as the State of Tennessee issues a business license to any business, such as the Plaintiff herein, the holder of the license acquires a property interest in the same--protected from removal, cancellation or suspension by the strictures of procedural Due Process.  <u>See</u> U.S. Const., am. XIV.

80.    Procedural Due Process in such instances requires the government to provide a license holder fair notice of the suspension of the license and a fair hearing to challenge the suspension or revocation of the same.  Neither Plaintiff, nor any other similarly situated business, was afforded its constitutionally-mandated rights in this regard.  Not one!

81.    These Defendants' actions are the very definition of tyranny!  In completely ignoring the property interests Plaintiff, and all other similarly situated businesses, have in their licenses by failing to afford them a fair hearing after giving them fair notice (by was of a summons to Court or an administrative agency) in order for said businesses to challenge the Orders in question--by presenting, say, actual scientific and medical evidence that the Orders were nonsensical and not likely  to result in preventing the spread of Covid-19 and presenting further evidence that said business (or businesses) could have operated safely (at least as safely at the "essential" businesses), these Defendants violated the procedural Due Process rights of Plaintiff and all of other businesses and it isn't even a close question!

82.    Apparently, the United States Constitution ceases to exist during flu season.  In any event, the Plaintiff, on behalf of itself and all other similarly situated class members, therefore sues these Defendants for denial of their procedural Due Process rights and seeks a refund of all class members' licensure fees.

83.    In addition, Plaintiff, and all other similarly situated businesses, seek to have this Court issue an Order, mandating the Governor give each shut-down business an actual hearing, so that it can present evidence.  Upon the conclusion of the hearing (perhaps in the Tennessee Claims Commission - or some similar body), this Court should mandate that if the business can prove

actual loss based upon the suspension of its license, that it be entitled to prove its actual damages therein and that the State of Tennessee be required to pay the same and all attorneys' fees as continuing in nature pursuant to section 1988 of title 42 of the United States Code.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants in its favor as follows:

A. That this Honorable Court issue summons, requiring these Defendants to Answer this Complaint;

B. That this Honorable Court certify this Complaint as a class action;

C. That the Plaintiff and the class members be awarded damages to be determined at trial.

D. For a temporary and permanent injunction to be issued by this Court in order to prevent any further irreparable damages to the Plaintiff and the class members.

E. For a declaration that the Orders are facially unconstitutional or are unconstitutional as applied to Plaintiff and all the class members.

F. For an Order, requiring the Defendants to afford the Plaintiff and class members their procedural due process rights--including for some ability to seek money damages if said business prevails in the lower court or administrative hearing which has been so far denied.

G. For attorney's fees and court costs to be assessed against the Defendants pursuant to 42 U.S.C. section 1988.

H. For a jury to be empaneled to hear this cause.

I. For discretionary costs.

Respectfully submitted,

**THE EGLI LAW FIRM**
s/Russ Egli
Russ Egli, BPR#024408
The Wisdom Building
11109 Lake Ridge Drive, FL3
Concord, TN 37934
(865) 304-4125

F:(855) 827-0624
E-mail: russelleglilaw@gmail.com

**LAW OFFICES OF DARREN V. BERG**

s/Darren V. Berg
Darren V. Berg
Lead Counsel
P.O. Box 33113
Knoxville, TN 37933
(865) 773-8799
E-mail: dberglawfirm@gmail.com

*Attorneys for the Plaintiff and other similarly*

*situated individuals*