# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| TD'S WESTERN WEAR AND TACK, LLC, class plaintiff, as well as all other similarly situated individuals including but not limited to foreign entities, | Case No. 3:20-cv-206 |
| | Judge Travis R. McDonough |
| *Plaintiffs*, | Magistrate Judge Debra C. Poplin |
| v. | |
| STATE OF TENNESSEE and GOVERNOR BILL LEE, | |
| *Defendants*. | |

## MEMORANDUM OPINION

Before the Court is Defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim (Doc. 11). For the reasons set forth below, Defendants' motion will be **GRANTED**, and this action will be **DISMISSED**.

## I.   BACKGROUND[1]

Plaintiff TD's Western Wear and Tack, LLC, is a Tennessee limited liability company with its principal place of business in Knox County, Tennessee. (Doc. 1, at 1–2.) Plaintiff operates as a retail store "selling western[-]themed boots and clothing." (*Id.* at 2.)

On March 12, 2020, Tennessee Governor Bill Lee issued an executive order declaring a state of emergency in the State of Tennessee due to the outbreak of the novel coronavirus

---

[1] The following factual allegations from Plaintiff's complaint (Doc. 1) are taken as true for the purpose of deciding Defendants' motion to dismiss. *See Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).

("COVID-19"). (*Id.* at 7.) On March 22, 2020, Governor Lee issued another executive order ("Executive Order No. 17") ordering, in part, that:

    a. Persons in the State of Tennessee shall not participate in social gatherings of ten (10) or more people.

    b. Persons in the State of Tennessee shall not eat or drink onsite at restaurants, bars, or other similar food or drink establishments, and shall not visit gyms or fitness/exercise centers or substantially similar facilities.

    c. Restaurants, bars, and similar food or drink establishments, including nightclubs, shall not be open to persons, except only to offer drive-through, pickup, carry-out, or delivery service for food or drink, and persons are highly encouraged to use such drive-through, pickup, carry-out, or delivery options to support such businesses during this emergency.

    d. Gyms or fitness/exercise centers or substantially similar facilities shall not be open to members or the public, although persons are highly encouraged to use any available electronic or virtual fitness options to support such businesses during this emergency.

    e. Persons in the State of Tennessee shall not visit nursing homes, retirement homes, or long-term care or assisted-living facilities, unless to provide essential assistance or to visit residents receiving imminent end-of-life care, provided such visits may be accomplished without unreasonable risk to other residents. Persons are highly encouraged to use available electronic or virtual communication to spend time with their family members, friends, loved ones, and other persons in these facilities.

    f. Persons and businesses should take particular care to protect the well-being of those populations especially vulnerable to COVID-19, including older adults and persons with compromised immune systems or serious chronic medical conditions, by, among other things, taking care to adhere to all precautions advised by the President and the CDC and refraining to the extent practicable from physical contact and association. Businesses should further consider implementing measure to protect our most vulnerable populations by, for example, offering delivery service or special opportunities for members of vulnerable populations to shop in retail establishments exclusive of the general population.

(Doc. 1-1, at 2–3.)

On March 30, 2020, Governor Lee issued another executive order ("Executive Order No. 21"), which amended Executive Order No. 17 to add the following additional subdivisions:

g. Businesses or organizations that perform close-contact personal services shall not be open to members or the public. Such businesses or organizations include, but are not limited to:

    i. Barber shops;
    ii. Hair salons;
    iii. Waxing salons;
    iv. Threading salons;
    v. Nail salons or spas;
    vi. Spas providing body treatments;
    vii. Body-are facilities or tattoo services;
    viii. Tanning salons; or
    ix. Massage-therapy establishments or massage services.

h. Entertainment and recreational gathering venues shall not be open to members or the public. Such venues include, but are not limited to:

    i. Night clubs;
    ii. Bowling alleys;
    iii. Arcades;
    iv. Concert venues;
    v. Theaters, auditoriums, performing arts centers, or similar facilities;
    vi. Racetracks;
    vii. Indoor children's play areas;
    viii. Adult entertainment venues;
    ix. Amusement parks; or
    x. Roller or iceskating rinks.

(*Id.* at 7.)

Also on March 30, 2020, Governor Lee issued an executive order ("Executive Order No. 22") ordering that "all persons in Tennessee are urged to stay at home, except for engaging in Essential Activity or Essential Services as defined in this order." (*Id.* at 10–11.) Executive Order No. 22 mandated the closure of "non-essential businesses" to the public. (*See id.* at 11.) Specifically, the order stated:

> Businesses or organizations that do not perform Essential Services shall not be open for access or use by the public or its members. Such businesses or organizations are strongly encouraged to provide delivery, including delivery curbside outside of the business or organization, of online or telephone orders, to the greatest extent practicable, and persons are encouraged to use any such options to support such businesses during this emergency.

3

(*Id.*) Executive Order No. 22 also stated that, while Essential Services were permitted to operate under the order, "all persons are strongly encouraged to limit to the greatest extent possible the frequency of engaging in Essential Activity or Essential Services." (*Id.*)

Attachment A to Executive Order No. 22 lists the following as "Essential Services": (1) certain "essential critical infrastructure workers" as defined by the Cybersecurity and Infrastructure Security Agency of the U.S. Department of Homeland Security; (2) "health care and public health operations," including hospitals, clinics, and medical-research facilities; (3) "human services operations," including day-care centers and residential facilities for persons with developmental disabilities or mental illness; (4) "essential infrastructure operations," including food production, distribution, and sale, utility operations, and internet, video, and telecommunications services; (5) "essential government functions," including first responders, legislators, judges and judicial branch employees, and law-enforcement personnel; (6) "food and medicine stores," including grocery stores, pharmacies, convenience stores, "and other establishments engaged in the retail sale of groceries . . . and any other household consumer products (such as cleaning and personal care products"; (7) food and beverage production and agriculture; (8) "organizations that provide charitable and social services," including food banks; (9) religious and ceremonial functions; (10) "media," including newspapers, television, radio, and publishing; (11) gas stations and businesses needed for transportation; (12) financial institutions and insurance entities; (13) hardware and supply stores; (14) "critical trades," including plumbers, electricians, and pest-control services; (15) mail, post, shipping, logistics, delivery, and pick-up services; (16) educational institutions; (17) laundry services; (18) "restaurants for off-premises consumption"; (19) "business that sell manufacture, or supply products necessary for persons to work from home or engage in distance learning";

4

(20) "businesses that sell, manufacture, or supply other Essential Services with the support or materials necessary to operate"; (21) transportation; (22) home-based care and services; (23) residential facilities and shelters; (24) "professional services," including legal services, accounting services, and real estate services; (25) "manufacturing, distribution and supply chain for critical products and industries"; (26) hotels and motels; (27) funeral services; (28) businesses related to "essential activities," including outdoor recreation areas and parks; and (29) "any other business or organization that operates at all times with ten (10) or fewer persons accessing the premise of the business or organization at a time." (*Id.* at 15–20.)

On April 8, 2020, Governor Lee further ordered ("Executive Order No. 25") that non-emergent dental and surgical procedures be postponed until after April 30, 2020. (*Id.* at 22–24.) Finally, on April 13, 2020, Governor Lee ordered ("Executive Order No. 27") that Executive Orders No. 17, 21, 22, and 23 remain in effect until April 30, 2020. (*Id.* at 25.)

Pursuant to these orders, Plaintiff was not permitted to operate its business from April 1, 2020, through April 30, 2020. (*See id.* at 13–14 (Executive Order No. 22 went into effect on March 31 at 11:59 p.m., Central Daylight Time).)

On May 13, 2020, Plaintiff filed this action against the State of Tennessee and against Governor Lee. (*See* Doc. 1.) Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violations of the Contracts Clause, substantive due process under the Fourteenth Amendment, and procedural due process under the Fourteenth Amendment.[2] (*Id.* at 13–21.) Plaintiff seeks

---

[2] Plaintiff purports to bring this action on behalf of a class of similarly situated individuals. (*See* Doc. 1, at 1.) However, as the Court noted in its scheduling order, the complaint fails to allege facts concerning the prerequisites for class-action lawsuits under Federal Rule of Civil Procedure 23. (Doc. 22, at 2.) Accordingly, the Court ordered Plaintiff to file an amended complaint on or before August 31, 2020, adding allegations related to the Rule 23 factors to the extent Plaintiff desires this action to proceed as a class action. (*See id.*) However, because the Court finds that Plaintiff has failed to state a claim that would support an individual action or a class action, the

5

damages, injunctive relief, and declaratory relief. (*Id.* at 21.) On June 17, 2020, Defendants filed their motion to dismiss (Doc. 11), which is now ripe for the Court's review.

## II. STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman*, 484 F.3d at 859. This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief.

---

Court will dismiss this action in its entirety, and there is no need for Plaintiff to file an amended complaint addressing the Rule 23 factors.

*Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

Defendants offer three arguments as to why the Court should dismiss Plaintiff's complaint: (1) Plaintiff's claims against the State of Tennessee and Plaintiff's claims for damages against Governor Lee in his official capacity are barred by the doctrine of sovereign immunity under the Eleventh Amendment; (2) Plaintiff's remaining claims for declaratory and injunctive relief are moot; and (3) Plaintiff fails to state a claim for any constitutional violation. (*See* Doc. 12, at 8–20.) The Court need not determine whether Plaintiff states a claim for the alleged constitutional violations, because Plaintiff's claims against the State of Tennessee and against Governor Lee for damages are barred by the Eleventh Amendment, and its claims against Governor Lee for injunctive and declaratory relief are moot.

#### A. Sovereign Immunity

Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Courts have interpreted the Eleventh Amendment as conveying sovereign immunity to states, and, in some cases, their officials. *See Boler v. Earley*, 865 F.3d 391, 409–10

7

(6th Cir. 2017). Specifically, "[s]overeign immunity protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court." *Id.* (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). There are, however, three exceptions to sovereign immunity: (1) "when the state has waived immunity by consenting to suit"; (2) "when Congress has expressly abrogated the states' sovereign immunity"; and (3) "when the doctrine set forth in in *Ex Parte Young*, [209 U.S. 123 (1908),] applies." *Id.* (citing *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016)).

Here, Plaintiff argues that sovereign immunity does not bar its claims against Tennessee or against Governor Lee in his official capacity because "Congress has specifically abrogated [Eleventh] Amendment immunity where a state deprives its citizens of life, liberty, or property without affording them due process of law." (Doc. 20, at 1.) Plaintiff does not cite to a specific case that states whether Congress has abrogated sovereign immunity for states in suits pursuant to 42 U.S.C. § 1983, but instead cites *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), and *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), for the premise that Congress has the power to abrogate state sovereign immunity. (*Id.* at 1–2.) While this is undoubtedly true, the inquiry into whether a particular action is barred by sovereign immunity concerns whether Congress *has* abrogated sovereign immunity for a particular suit and not whether Congress *can* abrogate sovereign immunity.

In this case, Plaintiff's claims are brought under 42 U.S.C. § 1983 (*see* Doc. 1, at 13–21), and the Supreme Court has explicitly held that § 1983 does *not* abrogate Eleventh Amendment sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (noting that "a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims" and that "Congress did not provide such a federal forum for civil rights claims against

8

States"). Thus, Plaintiff's claims against the State of Tennessee and its claims against Governor Lee in his official capacity for damages are barred by the Eleventh Amendment.

Plaintiff also cites *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913 (6th Cir. 2020), in support of its argument that Tennessee and Governor Lee are not immune from suit. (Doc. 20, at 3–5.) In *Adams & Boyle*, the Sixth Circuit upheld the district court's grant of a preliminary injunction against Governor Lee in his official capacity concerning one of the executive orders at issue in this case. 956 F.3d at 916–17. However, the opinion concerned only a preliminary injunction against Governor Lee and other state and county officials. *See id.* The State of Tennessee was not a party to the proceedings, and no claims for damages against Governor Lee were at issue in the Sixth Circuit's decision. *See id.* This case falls under the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity, not the Congressional abrogation exception. *See Boler*, 865 F.3d at 412. The *Ex Parte Young* exception "allows plaintiff to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Id.* (citing *S & M Brands, Inc. v. Cooper*, 5274 F.3d 500, 507 (6th Cir. 2008)). The exception does not extend, however, "to retroactive relief or claims for money damages." *Id.* (citations omitted). Thus, the test for whether the *Ex Parte Young* doctrine applies is "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (citing *Dubuc v. Mich. Bd. of L. Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)) (internal quotation marks and alterations omitted).

Here, Plaintiff seeks damages as well as retroactive injunctive and declaratory relief. (*See* Doc. 1, at 21.) Although Plaintiff purports to also request prospective injunctive relief (*see id.* (requesting "a temporary and permanent injunction to be issued by this Court in order to prevent any further irreparable damages to the Plaintiff")), it alleges no ongoing violation, and

the governmental action it actually seeks to enjoin—the restrictions in the executive orders—terminated prior to Plaintiff's filing of this action. Moreover, to the extent Plaintiff seeks prospective injunctive relief against Governor Lee in his official capacity, those claims fail for a different reason. *See infra* Section III.B. In any event, Plaintiff's claims against the State of Tennessee or against Governor Lee for damages do not fall within the *Ex Parte Young* exception.[3]

Plaintiff cites no case in support of its argument that Congress has abrogated sovereign immunity for suits against states and suits for damages against state officials in their official capacities. Indeed, there is Supreme Court precedent that states exactly the opposite. *See Will*, 491 U.S. at 66. Accordingly, because Plaintiff's claims against the State of Tennessee and against Governor Lee in his official capacity for damages are barred by the Eleventh Amendment, Defendants' motion (Doc. 11) will be **GRANTED** to the extent it seeks dismissal of these claims.

### B. Mootness

Defendants next argue that Plaintiff's claims for injunctive and declaratory relief against Governor Lee are moot. (Doc. 12, at 10–12.) Pursuant to Article III, § 2 of the Constitution, federal courts are limited in their jurisdiction to resolving "Cases" and "Controversies." *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). This limitation "restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Id.*

---

[3] The similar cases Plaintiff cites against the Kentucky governor and Michigan governor also concern prospective injunctive relief against state officials, and, therefore, do not support its argument that Plaintiff's claims against the State of Tennessee or against Governor Lee for damages should proceed. *See League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, --- F. App'x ---, 2020 WL 3468281 (6th Cir. 2020); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020).

(quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). Thus, for a federal court to have jurisdiction over a particular case, a plaintiff must show that he possesses a "personal stake"—or "legally cognizable interest"—in the outcome. *Id.* ("This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.").

One implication of this limitation is that the Court may not retain jurisdiction over cases that are moot. *Id.* (quoting *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 67 (1997)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Accordingly, "[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Id.* (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)).

Plaintiff contends that its claims are not moot, because it suffered injury. (*See* Doc. 20, at 10 ("[T]o say that their case is moot because the Governor after a few months allowed them to reopen is similar to arguing that a personal injury plaintiff who had his legs cut off three months ago no longer has a claim.").) However, the issue is not whether Plaintiff suffered a legally cognizable injury, but whether that injury remains remediable by this Court. Plaintiff cannot rely on its request for damages to render its claims remediable, because Governor Lee is immune from claims for damages. *Cf. L.L. By & Through B.L. v. Tenn. Dep't of Educ.*, No. 3:18-cv-00754, 2019 WL 653079, at *9 (M.D. Tenn. Feb. 15, 2019) (finding that a plaintiff could not rely on damages to argue that his claims were remediable because damages were not available

11

under the statute at issue). Thus, Plaintiff's claims must be remediable by injunctive or declaratory relief to proceed.

With regard to Plaintiff's claims for injunctive relief, when the challenged activity has ceased, enjoining that behavior provides no relief. *See City of Romulus v. Wayne Cnty.*, 634 F.2d 347, 348 (6th Cir. 1980) (observing that courts are in no position "prevent what has already occurred"); *see also Smith v. SEC*, 129 F.3d 356, 362 n.5 (6th Cir. 1997) (noting that a case is moot "if, assuming that the plaintiff receives the relief which he or she requests, such relief would no longer afford any meaningful legal benefit"). Concerning Plaintiff's claims for declaratory relief,

> the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Ford*, 469 F.3d at 504 (citing *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 459 (6th Cir. 2005)); *see also Coal. for Gov't Procurement*, 365 F.3d at 458 ("[C]ompletion of activity is not the hallmark of mootness. Rather, a case is moot only where no effective relief for the alleged violation can be given." (citing *McPherson*, 119 F.3d at 458)). "[D]eclaratory judgment actions often require courts to face the difficult task of distinguishing between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Coal. for Gov't Procurement*, 365 F.3d at 458 (citations and internal quotation marks omitted).

In this case, because the executive orders at issue are no longer in effect, neither declaratory nor injunctive relief would change the present legal status of the parties and granting either would risk issuing an unconstitutional advisory opinion. *See id.* As the Sixth Circuit has made clear, "[b]ecause the Court must 'apply the law as it is now,' it 'can no longer declare

unconstitutional nor enjoin the enforcement of a provision that is no longer in effect.'" *Dubac v. Parker*, 168 F. App'x 683, 688 (6th Cir. 2006) (first citing *Kremens v. Bartley*, 431 U.S. 119, 129 (1977), then citing *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004)); *see also Brandywine*, 359 F.3d at 835–36 (affirming district court's dismissal of claims for declaratory and injunctive relief as moot when challenged zoning scheme was no longer in effect). Consistent with this principle, the Supreme Court has instructed federal courts of appeals to dismiss challenges to executive orders as moot when the orders have "expired by their own terms." *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (mem.); *Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353 (2017) (mem.).

There is, however, an exception[4] to the mootness doctrine for cases "capable of repetition, yet evading review." *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998). For the exception to apply, "(1) the challenged action [must be] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)).

---

[4] The Supreme Court has also repeatedly recognized the related principle that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Although the parties do not raise this issue, the Court notes that this principle does not save Plaintiff's claims for declaratory or injunctive relief against Governor Lee. The Sixth Circuit has declined to apply this principle to cases in which the relevant government body or actor has made no indication that the challenged statute or ordinance will be reenacted. *Bench Billboard Co v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012) (citing *Brandywine*, 359 F.3d at 836; *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997)) (distinguishing these cases from those where the government announced an intention to reenact the challenged law or policy). The Sixth Circuit also recognized that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties" and that "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* (quoting *Mosely v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990)).

13
Case 3:20-cv-00206-TRM-DCP   Document 25   Filed 08/20/20   Page 13 of 15   PageID #: 139

In this case, Plaintiff seeks to claim this exception, arguing that—especially in light of the ongoing nature of the COVID-19 pandemic—Governor Lee "may issue multiple unconstitutional Covid 19 orders but will escape any damages in federal court so long as he withdraws said orders before a hearing on the merits."[5]  (Doc. 20, at 10.)  Plaintiff's claims, however, do not qualify for this exception, as they fail to satisfy either requirement.  First, as other courts have observed, executive orders "are not inherently too short in duration to be litigated."  *Cameron v. Beshear*, No. 3:20-cv-00023-GFVT, 2020 WL 2573463, at *2 (E.D. Ky. May 21, 2020) (citing cases in which COVID-19-related executive orders were reviewed by courts).  Second, Plaintiff has not shown a "reasonable expectation" that it will be subject to the same restrictions again.  A "theoretical possibility" that the complaining party will be subject to the same action again does not support application of the capable-of-repetition-yet-evading-review exception.  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also Martinko v. Whitmer*, --- F. Supp. 3d ---, 2020 WL 3036342, at *3 (E.D. Mich. 2020) ("Plaintiffs' assertion that 'there is a good chance that these restrictions will come back' . . . is pure speculation and does not suffice to avoid the conclusion that their request for prospective injunctive and declaratory relief is moot.").

Because the Court finds that Plaintiff's claims for prospective injunctive and declaratory relief against Governor Lee are moot, it lacks authority to consider the merits of these claims.  Accordingly, these claims will be **DISMISSED AS MOOT**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Doc. 11) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

---

[5] The Court again notes that Plaintiff's claims for damages are not defeated by mootness, but by Governor Lee's Eleventh Amendment immunity from such claims.  *See supra* Section III.A.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**